## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ISAAC LANDOURS,

    Petitioner,

v.

    No. 1:24-cv-0821 KWR-JFR
    1:22-cr-0451 KWR-JFR

UNITED STATES OF AMERICA,

    Respondent.

### <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Petitioner Isaac Landours' Motion to Vacate Federal Sentence Under 28 U.S.C. § 2255 (CV Doc. 1; CR Doc. 79) (Motion). Landours is incarcerated and proceeding *pro se*. He asks the Court to vacate his conviction based on four grounds of ineffective assistance of counsel. The United States responded. (CV Doc. 8). Having reviewed the record and applicable law, the Court will dismiss the Motion with prejudice and deny a certificate of appealability.

### BACKGROUND

On November 15, 2021, Landours met with a confidential source (CS) and an undercover Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). (CR Doc. 1) (Complaint). Through a controlled sale, Landours sold 56.04 grams of methamphetamine to the CS and undercover agent in exchange for $440. *Id.* On March 23, 2022, a grand jury returned a one-count Indictment against Landours, charging him with unlawfully, knowingly, and intentionally distributing 50 grams and more of methamphetamine in violation of 21 U.S.C. §§ 841 (a)(1) and (b)(1)(A). (CR Doc. 4) (Indictment).

The United States Probation Office submitted a Presentence Investigation Report (PSR)

on March 31, 2023.   (CR Doc. 38).   Landours entered a guilty plea pursuant to a Federal Rule of

Criminal Procedure Rule 11(c)(1)(B) Plea Agreement on February 2, 2023.   (CR Doc. 35) (Plea

Agreement); (CV Doc. 8-4) (Plea Hearing Transcript).   He appeared for sentencing on June 21,

2023 and July 27, 2023, however, both hearings were continued in order for the parties to submit

additional briefing.   On August 9, 2023, Landours was sentenced to a total term of 188 months

imprisonment and 4 years supervised release.   (CR Doc. 58) (Judgment).

Landours appealed his conviction.   *U.S. v. Landours*, No. 23-2131, 2024 WL 687715 (8th

Cir. 2024).   He argued the district court erred in finding that: (1) a state conditional discharge

was a conviction for purposes of calculating his criminal history; and (2) he was subject to a

career offender enhancement. *Id.*   The Eighth Circuit dismissed the appeal because it was barred

by the appellate waiver in Landour's Plea Agreement.   *Id.*

On August 16, 2024, Landours filed the instant Motion To Vacate, Set Aside, or Correct

Sentence Under 28 U.S.C. § 2255 seeking to vacate his conviction and sentence.   (CV Doc. 1;

CR Doc. 79).   The Motion asserts four grounds of ineffective assistance of counsel:

> (Claim 1):   Counsel failed to argue that the prosecutor intentionally omitted a portion of the New Mexico conditional discharge statute, which resulted in him being improperly classified as a career offender;

> (Claim 2):   Counsel was "continuously tardy with her filings," which prevented the Court from reviewing briefs;

> (Claim 3):   Counsel failed to argue against a two-point gun enhancement as there was no relationship between the gun and the drug offense; and

> (Claim 4):   Counsel should not have allowed him to sign a plea agreement that included an appellate waiver because there were "clear issues" that needed to be appealed.

(CV Doc. 1 at 4-8; CR Doc. 79 at 4-8).   The Government filed a Response.   (CV Doc. 8).

2

**DISCUSSION**

A petition under 28 U.S.C. § 2255 attacks the legality of a federal prisoner's detention. *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996). A district court may grant relief under § 2255 if it determines "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255.

Because Petitioner is proceeding *pro se*, the Court will liberally construe his pleadings. *See Haines v. Kerner*, 404 U.S. 519 (1972). This broad reading of a *pro se* litigant's pleadings does not, however, relieve him of the burden of alleging sufficient facts upon which a legal claim may be based. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

**A.  Ineffective Assistance of Counsel**

A successful ineffective assistance of counsel claim must meet the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the petitioner must show "[c]ounsel's performance was deficient" and contained "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 688. In other words, the representation must fall below an objective standard of reasonableness based on prevailing professional norms. *Id.* at 687-88. The Court is required to "eliminate the distorting effects of hindsight" and "indulge a strong presumption that counsel acted reasonably." *Welch v. Workman*, 639 F.3d 980, 1012 (10th Cir. 2011) (quotations omitted). The question to determine deficient performance "is whether [the] representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Simpson v. Carpenter*, 912 F.3d 542, 593 (10th Cir. 2018) (quoting *Harrington v.*

3

*Richter*, 562 U.S. 86, 105 (2011)); *Williamson v. Ward*, 110 F.3d 1508, 1514 (10th Cir. 1997) ("There is a strong presumption that counsel's performance falls within the wide range of professional assistance, the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.") (citations omitted).

The second prong of *Strickland* requires the petitioner to affirmatively prove the deficient performance prejudiced the defense. *Battenfield v. Gibson*, 236 F.3d 1215, 1234 (10th Cir. 2001) (citing *Strickland*, 466 U.S. at 693). The movant must establish prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the context of pleas, the petitioner must "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). *See also Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("[A] defendant must show the outcome of the plea process would have been different with competent advice"). Courts may analyze either prong first and need only address one prong if the movant fails to make a sufficient showing on that prong. *Id.* at 697.

### 1. Failure to Argue Against his Career Offender Classification

In his first ground for relief, Landours argues his counsel provided ineffective assistance when he "failed to realize the [prosecutor] intentionally omitted a portion of the New [M]exico conditional discharge statute, M.M.S.A. § 31-20-13," which resulted in his classification as a career offender. (CV Doc. 1 at 4). Landours claims the prosecutor misrepresented to the Court how the New Mexico statute should apply to his sentence. He reasons that if his attorney understood the statute, he would have argued that one of Landours' two prior criminal convictions should not have

qualified as a felony and he would not have been classified as a career offender.

Prior to his sentencing, the Probation Office issued a PSR, which determined his guideline range to be 188 to 235 months' imprisonment.   (CR Doc. 38 at ¶ 88).   This was based on a total offense level of 31 and a criminal history category of VI.   *Id.*   The calculation started at a base offense level of 30.   *Id.* at ¶ 22.   A two-level enhancement was applied for possession of a firearm, increasing his offense level to 32. *Id.* at ¶ 23.   A "career offender" enhancement was applied, increasing his offense level to 34.   *Id.* at ¶ 28.   Three points were deducted because of his acceptance of responsibility.   *Id.* at ¶¶ 29-30.

Landours' attorney filed an objection to the PSR, contesting the career offender enhancement.   He argued in pertinent part:

> The Probation Office improperly assessed a career offender enhancement pursuant to USSG §4B1.1 to increase the adjusted offense level from 32 to 34 based upon "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." PSR at ¶ 28.   A review of Mr. Landours' criminal history reveals that Mr. Landours has only one controlled substance offense felony conviction, that being, Trafficking (By Possession with Intent to Distribute) methamphetamine on September 25, 2019.   PSR at ¶ 36.   It appears the Probation Office utilized 2011 charges for Distribution of Marijuana and Conspiracy to Commit Distribution of Marijuana, which resulted in an Order of Conditional Discharge, in its assessment.   PSR at ¶¶ 35 & 36.

(CR Doc. 46-1 at 4).   Essentially, his attorney reasoned that because the 2011 drug conviction resulted in a conditional discharge, it was not a finding of guilt, and should not have been considered as a prior felony conviction.   At the July 27, 2023 Sentencing Hearing, Landours' attorney orally advocated against the Court's application of a career offender enhancement.   (CR Doc. 76 at 5-7).   He argued the conditional discharge should be considered akin to a non-conviction, a pardon, or an expungement.   *Id.*

"The Sentencing Guidelines authorize an increase in the criminal history category if the

defendant is identified as a 'career offender.'"    *United States v. Johnson*, No. CR 18-0220 JB, 2021 WL 53338, at \*10 (D.N.M. Jan. 6, 2021).    There are three requirements to be classified as a career offender: (1) the defendant must be at least eighteen years old at the time he committed the offense; (2) the offense of conviction must be a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant must have at least two prior felony convictions of either a crime of violence or a controlled substance offense.    U.S.S.G. § 4B1.1.    "Two prior felony convictions" is defined in the Sentencing Guidelines as:

> (1) the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense (i.e., two felony convictions of a crime of violence, two felony convictions of a controlled substance offense, or one felony conviction of a crime of violence and one felony conviction of a controlled substance offense), and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of §4A1.1(a), (b), or (c). *The date the defendant sustained a conviction shall be the date that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of nolo contendere.*

U.S.S.G. § 4B1.2 (emphasis added).    The Sentencing Guidelines further provide that "[t]he term 'prior sentence' means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere*, for conduct not part of the instant offense" and "'[c]onvicted of an offense' . . . means that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of *nolo contendere*."    U.S.S.G. §§ 4A1.2(a)(1), 4A1 .2(a)(4) (emphasis added).

In New Mexico, state courts can grant a conditional discharge as follows:

> When a person who has not been previously convicted of a felony offense is found guilty of a crime for which a deferred or suspended sentence is authorized, the court may, without entering an adjudication of guilt, enter a conditional discharge order and place the person on probation on terms and conditions authorized by Sections 31-20-5 and 31-20-6 NMSA 1978.    A conditional discharge order may only be made available once with respect to any person.

6

N.M. Stat. Ann. § 31-20-13.

Landours does not contest that he entered a plea of nolo contendere for his 2011 controlled substance charge.   After considering Landours' plea, the written and oral arguments of the parties, the Sentencing Guidelines, and the New Mexico statute, this Court overruled Landours' objection to the career enhancement.   (CR Doc. 76 at 11-13).   While the instant Motion argues there was a failure of his counsel to highlight the "without entering an adjudication of guilt language" from the New Mexio statute, the sentencing transcript reflects that the full text of the statute was considered:

> THE COURT:   . . . Now, the career-offender enhancement, I believe, along with the criminal history point are part and parcel of the same analysis for making that decision, and in looking at that, certainly looking at the Sentencing Guidelines, the Court had to take a deep dive back into state statute and look at it, and *what it appears to turn on is the finding of guilt, not whether or not there was a pardon or that type of thing*.   I remember the comment, I don't remember exactly where in – that you were talking about, Mr. Cordova, about these should not be allowed if they were granted these special sentences under state law to benefit from them if they continue to engage in criminal conduct.
>
> And in looking – let me find my notes here – at the state statute, a New Mexico statute, *the defendant is arguing that his conviction for distribution of marijuana and conspiracy in D-1314-CR-2011352 which resulted in an order of conditional discharge eventually should not be counted as a criminal history point or as a conviction for purposes of career-offender enhancement because there was no finding of guilt*.   That is what the argument under 4A1.2(f) is, and, thus, the defendant didn't have the requisite two felony prior convictions and shouldn't get a criminal history point.
>
> Under 4A1.2(a)(4), convicted of an offense is defined as the finding of guilt of the defendant, which has been established by plea, trial, or plea of nolo (~) contendere.
>
> New Mexico Statutes 31-20-13A talks about a conditional discharge and says that a conditional discharge can only be granted when a person is found guilty of a crime for which a deferred or suspended sentence is authorized.   A conditional discharge is not a diversionary sentence at all, and there is a finding of guilt, and the no-contest plea in D131-CR-2011252, thus, qualifies in this case as a conviction for purposes of 4A1.2(a)(4) and the Court will find that the United States has met that burden by a preponderance of the evidence, and, therefore, also qualifies for a one-point criminal history addition.

> Now, to be a career offender, 4B1.1A requires that the defendant was at least 18 years of age when he committed the instant offense. There's no objection to that. Also, that the instant offense is a felony that is either a crime of violence or a controlled-substance offense. That clearly has been established. And the Court has found that by a preponderance of the evidence the defendant has at least two prior felony convictions regarding a controlled-substance offense. This objection is also overruled.

*Id.* at 11-12 (emphasis added).

While Landours argues that his counsel was ineffective for properly challenging his classification as a career offender, the record clearly indicates otherwise. Self-serving factual allegations that are contradicted by the record and are inherently incredible, do not entitle a Section 2255 movant to relief. *See United States v. Mascheroni*, 2017 WL 4997977, at *6 (D.N.M. Oct. 31, 2017). Because the record clearly illustrates that counsel expressly advocated against the career offender enhancement and the Court considered the relevance of the "guilt" language in the New Mexico statute, Landours cannot establish that his counsel's performance "fell below an objective standard of reasonableness," and cannot prevail on his ineffective assistance claim. *See Strickland*, 466 U.S. at 688.

Further, Landours has not established prejudice because he has not shown that the result of his proceedings would have been different but for counsel's actions. The Court found Landours' argument to be unpersuasive after attorney *did* contest the career enhancement, and the Court acknowledged it was Landours' position that an order of conditional discharge should not be counted as a conviction because there was no finding of guilt. *See United States v. Black*, 44 Fed. Appx. 368, 369 (10th Cir. 2002) (petitioner must establish that he would have received a lighter sentence but for counsel's errors in the sentencing phase); *United States v. Romero-Gallardo*, 113 Fed. Appx. 351, 354 (10th Cir. 2004) (petitioner must show that, but for counsel's errors, the result of the sentencing proceeding would have been different).

### 2.  Trial Counsel's Late Court Filings

In his second ground for relief, Landours argues he was provided ineffective assistance "when [his attorney] was continuously tardy with her filings, which deprived the Court an adequate opp[o]rtunity to fully review the briefs and the law associated with them."  (CV Doc. 1 at 4).  In support, Landours points to one late filing, the Motion for Leave to File Formal Objections to the PSR, which was submitted to the Court on the evening of June 20, 2023.  (CR Doc. 46).  His Sentencing Hearing was scheduled for the following day on June 21, 2023.

Within the Motion for Leave to File Formal Objections to the PSR, his counsel explained she had been unable to arrange an in-person meeting with Landours since the United States Probation Office disclosed the PSR on April 28, 2023.  (CR Doc. 46-1 at 2).  She appeared to indicate the scheduling problem was related to issues coordinating with the Jail in which Landours was housed.  *Id.*  Within her formal objections, which she attached to her Motion for Leave, Landours' counsel contested the assessment of a criminal history point for his distribution of marijuana and conspiracy to commit the distribution; his status as a career offender; and the two-point enhancement for the possession of a firearm.  *Id.*

To evidence his counsel's deficient performance, Landours points to the transcript of the June 21, 2023 hearing and the continuance of his sentencing:

> THE COURT:  . . . Mr. Cordova, did you receive the Motion for Leave to File Formal Objections to Presentence Report and Motion for Leave to File Defendant Landours' Sentencing Memo that was filed this morning?
>
> MR. CORDOVA:   I have, Your Honor.
>
> THE COURT:   All right.   Clearly, you have not had time to respond to those filings.   They are substantive filings.   Would you like to have time to respond to those?

9

MR. CORDOVA:   I would, Your Honor. I've reviewed them.   Certainly, there's some issues I'd like to address and some research I'd like to do on a couple of the issues.

THE COURT:   All right.   And I think that would be helpful to the Court. Certainly, they were not filed timely, and that's something that I am going to address off the record with Ms. Hall and Ms. Katze.   That's why I've asked Ms. Katze to be here this morning.   So, with your permission, if you have no objection, I would like you to know that I am going to speak to Ms. Hall and Ms. Katze after this hearing, and it will not be on the record.   It will not be about the substance of the case.   It will just be about procedural issues.   Any objection to that, Mr. Cordova?

MR. CORDOVA:   No objection, Your Honor.

THE COURT:   All right.   Thank you.   I think the Court has no choice this morning but to continue this sentencing hearing.   Mr. Landours, we will set this for a sentencing hearing at a later date after the United States has had the opportunity to respond to the filings that were made this morning.   You'll certainly have opportunity to discuss those with your attorney before we come back, and your attorney will let you know when that date is.   Okay?

THE DEFENDANT:   Okay.   Thank you, ma'am.

(CR Doc. 72 at 2-3).

On June 30, 2023, the Government filed its Response to Landours' Objections to the PSR. (CR Doc. 50).   On July 5, 2023, the Government filed its Response to Landours' Sentencing Memorandum.   (CR Doc. 51).   At the rescheduled Sentencing Hearing held on July 27, 2023, the Court heard arguments from both sides regarding Landours' objections, and the Court made determinations on the merits of those objections.   *See* (CR Doc. 76 at 3-13).   Additionally, Landours' attorney presented a new argument as to whether New Mexico's subsequent decriminalization of marijuana would prevent a prior conviction from being considered in his career-offender enhancement analysis.   *Id.* at 13-15.   Because this issue was not briefed, the Court allowed time for further briefing and continued the sentencing hearing again.   *Id.* at 15-16.   A few days later, however, Landours' counsel indicated that after investigating the argument it was most

10

appropriate to withdraw the objection.   (CR Doc. 56).

It is clear from the July 27, 2023 hearing, after the Court allowed the Government to respond to Landours' objections to the PSR in writing and both parties were invited to discuss the issues orally, all three of Landours' objections were considered by the Court and decided on their merits. Even if this Court could find deficient performance by Landours' counsel for the untimely filings, "because the district court resolved Defendant's untimely motion on the merits . . . Defendant cannot show prejudice from his trial counsel's tardy filing," and the "ineffectiveness claim therefore must be rejected."   *United States v. Pehrson*, 65 F.4th 526, 539, n.8 (10th Cir. 2023); *Mason v. United States*, 719 F.2d 1485, 1491 (10th Cir. 1983).   As such, the Court will deny Landours' second ground for ineffective assistance of counsel.

### 3.   Failure to Argue the 2-Point Gun Enhancement Did Not Apply

In his third ground for relief, Landours argues he was provided ineffective assistance of counsel for failing "to argue the 2-point gun enhancement did not apply because there was no temporal and spatial relationship between the gun and the drug offense."   (CV Doc. 1 at 4).

As the Government points out in its Response, Landours' ineffective assistance argument cannot stand because his counsel did not fail to litigate the 2-point gun enhancement.   Rather, his attorney filed an objection to the PSR insisting that the enhancement should not apply:

> The Probation Office included a 2-point enhancement pursuant to USSG § 2D1.1(b)(1) "if a dangerous weapon, including a firearm was possessed." PSR at ¶ 23.   The Commentary to §2D1.1(b)(1) provides that application of subsection (b)(1) "should be applied if the weapon was present, unless it is improbable that the weapon was connected with the offense."   In this instance, no firearm was present during the sale of methamphetamines to the Undercover Agent on November 15, 2022, the charged offense.   The firearms referenced by the Probation Office were located on April 6, 2022, during the search of the residence and Mr. Landours' vehicle.   Importantly, the search was conducted nearly six months after the November 15, 2021, incident and numerous items seized during the search were located in other areas of the residence not rented by Mr. Landours.

11

> Mr. Landours was renting a single bedroom of a trailer home from two individuals who continued to share use of the bedroom area where Mr. Landours slept, including the bedroom closet and furniture with drawers.   Mr. Landours objects to the 2-point enhancement as no firearm or weapon was present during November 15, 2021 offense conduct to which he is charged.

(CR Doc. 46-1 at 3-4).   And, at the July 27, 2023 Sentencing Hearing, Landours' attorney raised the same arguments.   (CR Doc. 76 at 7-8).

While Landours argues that his counsel failed "to argue the 2-point gun enhancement did not apply because there was no temporal and spatial relationship between the gun and the drug offense," the record, as cited above, indicates otherwise.   Thus, counsel was not ineffective as she did, in fact, challenge the enhancement.   These facts demonstrate that counsel's performance was not legally deficient and Landours was not prejudiced.

### 4.   Inappropriately Allowed Landours to Enter into the Plea Agreement

In his fourth ground for relief, Landours argues he was provided ineffective assistance of counsel "when she allowed [him] to sign a plea agreement that included an appellate waiver when there were clear issues to appeal."   (CV Doc. 1 at 4).   Specifically, Landours asserts that once the Court determined he would be sentenced as a career offender, his counsel "had an obligation to re-negotiate or move to withdraw from the plea agreement's waiver to appeal these issues."   *Id.* at 16.   He states that he "believed and relied on his counsel's interpretations of the New Mexico statutes' conditional discharge not affecting his guideline[.]"   *Id.* at 17.   Thus, he claims, his plea was not knowing or voluntary.   *Id.*

"The procedures under which a challenged plea was taken play an important . . . role in determining the validity of the plea."   *Tovar Mendoza v. Hatch*, 620 F.3d 1261, 1269 (10th Cir. 2010).   "[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable

barrier in any subsequent collateral proceedings." *Id.* (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)).   "[S]olemn declarations in open court carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74.

Here, Landours is essentially contending that his plea was not made knowingly and voluntarily due to his counsel's failure to encourage him to reject the plea agreement after the Court made its determination that he would be sentenced as a career offender.   This argument, however, is belied by the record because he was explicitly informed by the Court that whatever estimate his attorney provided him in regards to his total sentence was not guaranteed and, regardless of entering into the Plea Agreement, the District Judge could go above the sentencing guideline range.   Landours repeatedly expressed his understanding.   The plea colloquy included the following relevant dialogue:

> THE COURT:   And then, Ms. Fontanez [prosecutor], could you please tell us what the potential penalties are that are associated with this crime?
>
> MS. FONTANEZ:   Yes, Your Honor.   For a violation of 21 USC Sections 841(a)(1) and (b)(1)(b), the defendant faces a term of imprisonment of not less than five years and not more than 40 years, a fine not to exceed $5 million, a term of supervised release that is not less than four years and not more than life to follow any term of imprisonment, and a mandatory special penalty assessment of $100.00.
>
> THE COURT:   Mr. Landours, do you understand that those are the potential penalties you face?
>
> THE DEFENDANT:   Yes, ma'am.
>
> THE COURT:   All right.   Now I want to talk with you for a moment about the Sentencing Guidelines and how they work.   The District Judge who will sentence you will be Judge Riggs.   She will be required to calculate your particular Sentencing Guideline Range.   She then must consider that range and any possible departures.   She must consider another -- a number of other factors, many of which are listed under 18 United States Code Section 3553(a).   And although Judge Riggs is required to consider your Sentencing Guideline Range, she is not bound by that range.   Now have you talked with Ms. Hall about the Sentencing

13

Guidelines and how they might apply in your particular case?

THE DEFENDANT:   Yes, ma'am.

THE COURT:   *And has she explained to you that those guidelines are not binding and that Judge Riggs could decide that you should get more or less of a sentence than the guidelines recommend?*

THE DEFENDANT:   *Yes, ma'am.*

THE COURT:   Now I also want to make [sure] that you understand that it's perfectly appropriate for Ms. Hall to give you her best estimate of what the Sentencing Guidelines are likely to be at sentencing.   *But I want to make sure that you understand that if it turns out that her estimate is different than what Judge Riggs decides, at that point you will not be able to withdraw your guilty plea.   Do you understand that?*

THE DEFENDANT:   *Yes, ma'am.*

. . .

THE COURT:   All right. I want to turn to a particular provision in your plea agreement.   It starts at Page Four and continues onto Page Five, Paragraph Nine, and this provision is entitled, Recommendations.   Do you see that there on the copy you have?

THE DEFENDANT:   Yes, ma'am.

THE COURT:   All right.   So this particular provision essentially is agreements between you and the Government about how the Sentencing Guidelines should be applied to you.   And I just want to make sure that you understand that these recommendations are not binding on Judge Riggs.   Do you understand that?

THE DEFENDANT:   Yes, ma'am.

THE COURT:   *So in other words you could get to sentencing and Judge Riggs could say, "Look I'm not going to accept some or all of these recommendations." But at that point you would not be able to withdraw your guilty plea.   Do you understand that?*

THE DEFENDANT:   Yes ma'am.

THE COURT:   *And then I also want to make sure you understand that it's possible that even if Judge Riggs accepts all of these recommendations, it's possible that she could impose a sentence that is harsher in some way than the*

14

*sentence you anticipate.   But at that point you would not be able to withdraw your guilty plea.   Do you understand that?*

THE DEFENDANT:   Yes, ma'am.

(CR Doc. 75) at 10-12 (emphasis added).

A review of the above plea colloquy conducted during the plea hearing evidences that Landours' guilty plea was entered into with the understanding that regardless of his counsel's predictions on how the Court might apply the state's conditional discharge statute, his sentence would be entirely within the discretion of the District Judge, and he would be unable to withdraw his guilty plea if he got a harsher sentence than he anticipated.   Landours indicated his understanding that any sentence his attorney suggested was only an estimate and not a guarantee. The plea colloquy contradicts Landours' argument that his guilty plea was not knowing or voluntary as he was quite aware that the District Judge could treat him as a career offender (e.g., impose him a harsher sentence that exceeds the recommendations in his Plea Agreement) and that his attorney could not have simply asked the Court to allow him to withdraw his plea.   *See United States v. Kutilek*, 260 App'x 139, 145 (10th Cir. 2008) (relying on plea colloquy to find that defendant's plea was knowing and voluntary).   The Tenth Circuit consistently "denie[s] relief under . . . § 2255 to petitioners alleging that their guilty pleas were the product of ineffective assistance when their plea colloquies demonstrated otherwise."   *Holt v. Brac*e, 418 Fed. App'x 697, 701 (10th Cir. 2011) (collecting Tenth Circuit cases).

Further, "an erroneous sentence estimation is not necessarily constitutionally deficient performance even where counsel erroneously states the applicable sentence range or minimum sentence or incorrectly advises a defendant he would not be subject to career offender provisions. This is especially true when the Defendant has otherwise been made aware of the applicable

15

sentence range." *United States v. Reed*, No. 1:18-CR-01576 KWR, 2020 WL 6743099, at *4

(D.N.M. Nov. 17, 2020), *aff'd*, 39 F.4th 1285 (10th Cir. 2022). *See also United States v.*

*Hamilton*, 510 F.3d 1209, 1216 (10th Cir. 2007) ("Mr. Hamilton's allegation that he would have

gone to trial but for his attorney's failure to advise him of the career-offender provision is

insufficient to establish prejudice."); *United States v. Mannie*, 2012 WL 13059260, at *5 (W.D.

Okla. Apr. 2, 2012) (erroneous advice from counsel that he would not be determined an armed

career criminal and government would not use his criminal convictions to enhance his sentence

vitiated by plea agreement and colloquy). Thus, Landours fails to show that his counsel's

performance was constitutionally deficient.

Also, worthy of note, his attorney did orally object to the application of the career

offender provision , but it was in the Court's discretion to reject the argument. (CR Doc. at 76 at

5-7). *See also* (CR Doc. 74 at 3) (requesting the mandatory minimum of five years because the

career designation resulted in an "unwarranted disparity"). Thus, Landours fails to show that his

counsel's performance was constitutionally deficient.

Further, he fails to establish any prejudice from the alleged errors. He has made no

showing that he would have elected to forgo his guilty plea and proceed to trial if he had a more

involved discussion with his attorney about the possibility he could be sentenced as a career

offender. *See Cardenas-Uriarte v. United States*, 2013 WL 12327787, at *5 (D.N.M. Nov. 18,

2013), *report and recommendation adopted*, 2014 WL 12796936 (D.N.M. Feb. 12, 2014) ("It is

beyond dispute that, at his plea hearing and prior to entering a guilty plea, Petitioner was advised

of the consequences of pleading guilty including that he could receive a term of imprisonment up

to 40 years. Therefore, Petitioner cannot show he was prejudiced by counsel's supposed failure

to describe those same consequences."). The penalty of the crime for which he was charged was

16

no less than five years and not more than 40 years.   He was sentenced to 15.6 years, which is significantly less than the maximum time he could have faced if he proceeded to trial. Consequently, Landours has established neither deficient performance nor prejudice, and thus he fails to show ineffective assistance counsel under *Strickland*.

### B.   A Certificate of Appealability Will Be Denied

Habeas Corpus Rule 11 provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   A certificate of appealability requires "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2). The "petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."   *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).   For the reasons explained above, the Court finds that reasonable jurists could not debate the denial of Landours' § 2255 motion and, therefore, a certificate of appealability will be denied.

**IT IS ORDERED** that Petitioner Isaac Landour's Motion to Vacate Federal Sentence Under 28 U.S.C. § 2255 (CV Doc. 1; CR Doc. 79) (Motion) is **DISMISSED with prejudice**; a certificate of appealability is **DENIED**; and a separate judgment will be entered closing the civil case.

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE